Feb. 1840.

Jewett and
another
v.
The Albany
City Bank
and another.

JEWETT, and another *vs.*

THE ALBANY CITY BANK and another.

In a suit against a corporation where the bill was addressed to the Chancellor, returnable before a Vice Chancellor, in which corporation after filing of the bill, the Chancellor becomes a stockholder, no appeal lies from an order or decree of the Vice Chancellor to the Chancellor.

In such case the Chancellor, by reason of his interest as a stockholder, is legally incapacitated from acting as judge, and an appeal only lies from the Vice Chancellor to the court for the correction of errors.

If in such case an appeal is taken from the Vice Chancellor to the Chancellor, and the Chancellor makes an order upon such appeal, it is the duty of the Vice Chancellor to disregard such order.

Consequently when an order in such cause was made by a Vice Chancellor, denying a motion to open proofs therein, which upon appeal to the Chancellor, was reversed, and new proofs admitted, the Vice Chancellor should surpress such new proofs upon the hearing before him.

And in this the Vice Chancellor does not " discharge, reverse or alter" any order of the Chancellor, because the order made by the Chancellor is a nullity, on the ground of his interest in the corporation.

THIS was a bill addressed in the ordinary mode to the Chancellor of the state of New York, with a prayer for a subpœna returnable before the Vice Chancellor of the Eighth Circuit, and was filed in the Eight Circuit while the late Vice Chancellor of that Circuit was in office. The order to close proofs in this cause was entered by the complainants, a short time before the 10th day of September last. On the 10th day of September last, the defendants, the Albany City Bank, applied to the Vice Chancellor of the 8th Circuit, upon affidavits to open the order closing proofs. This motion was denied by the Vice Chancellor, and an appeal from the order

Feb. 1840.

Jewett and another v. The Albany City Bank and another.

denying such motion, was taken by the Albany City Bank, to the Chancellor. Upon the hearing of this appeal, the Chancellor declared that he was a stockholder in the Albany City Bank, and that he could only make a *pro forma* decree to enable the parties to take the case to the court of Errors. The Chancellor on such hearing reversed the order of the Vice Chancellor, and gave the parties further time to produce witnesses.

The Albany City Bank, under the order, did examine witnesses and proved certain exhibits. The complainants did not attend upon such examination or examine any witnesses, on their part, under this order, and they made an application to suppress all the depositions taken by the Albany City Bank, under this last order, for the reason that the order of the Chancellor, directing such examination and overruling the order of the Vice Chancellor, was a nullity.

*H. R. Selden,* for complainants.

*H. H. Martin,* for Albany City Bank.

THE VICE CHANCELLOR. By the Revised Statutes, the court of Chancery is one court, and its powers are vested in the Chancellor, (2 R. S. p. 97, Sec. 1.) The Vice Chancellors are subordinate officers of the court, vested with certain equity powers by the legislature, but subject, under the constitution, to the appellate jurisdiction of the Chancellor. (Const. Art 5, Sec. 5.) The legal theory in relation to our equity system, is that now they are all vested in one court, the court of Chancery, and in one officer, the Chancellor, all other officers of the court, from the Vice Chancellors down are but subordinate members

of the same court, and only perform functions which the Chancllor, from want of time, is not presumed to be able to perform. Hence all bills, petitions and other proceedings of that nature are addressed to the Chancellor, though under the statute and rules, the subject matter of them may be first acted upon by a Vice Chancellor; but in all such action of the Vice Chancellor, he acts only in aid of, and as a subordinate officer to the Chancellor. The Chancellor has appellate jurisdiction over the decisions of the Vice Chancellors both by the article of the constitution above cited and by express legislative provision. (2 R. S. p. 97, Sec. 2.) And the 6th section of the same article, (2 R. S. p. 98,) further declares that "the Vice Chancellors shall not have power to discharge, reverse or alter any decree, order or act, made or done by the Chancellor."

Jewett and another

v.

The Albany City Bank and another.

So far the system is harmonious, and the powers and relative functions of each of the officers is clearly defined. How then is a person to obtain redress in the court of Chancery in a case where the Chancellor is a party or interested? The 10th section of the article last above cited, provides for even this case, (2 R. S. p. 98, Sec. 10,) and declares that "where the Chancellor shall be a party to a suit in Chancery, or interested in the event of such suit, the bill shall be addressed to, and filed before some one of the Vice Chancellors, who shall proceed thereon as a court of Chancery, and shall possess all the powers of that court in relation to the subject matter of such bill; and appeals from any order or decree of such Vice Chancellor, shall be made immediately to the court for the correction of errors, in the same manner as if such order or decree had been made by the

Feb. 1840.

Jewett and
another

v.

The Albany
City Bank
and another.

Chancellor." This section evidently contemplates that where the Chancellor is a party or interested, the bill instead of being addressed to the Chancellor in the usual form, it shall be addressed to one of the Vice Chancellors, and it would evidently be proper, as a reason for such an address, to suggest in the bill itself, that the Chancellor was either a party or interested. In such suit it is clear too that the Vice Chancellor to whom such bill was addressed would *pro hac vice* sit as Chancellor, and notwithstanding the provision of the constitution, the legislature have, in such case, taken away the appellate jurisdiction of the Chancellor. This is done upon clear and plain common law grounds, that no judge should ever be permitted to decide in his own cause. It is a case of necessity, and is well explained by Chancellor Sanford, in 1 Hopkins', page 1, &c. See also the revisers' notes, 3 R. S. page 667.

If in this case, then, the bill had been addressed to one of the Vice Chancellors, after suggesting the interest of the Chancellor, there would have been no doubt. It would have been conceded, that the appeal from the Vice Chancellor to the Chancellor, would have been irregular, and his order upon such appeal entirely null and inoperative.

But the bill was not so addressed. It was addressed in the usual way, " To the Chancellor of the State of New-York ;" and prayed process returnable before the Vice Chancellor of the eighth circuit, before whom the bill was actually filed ; and it is to be assumed, too, that the process issued under such bill, was, as it naturally would have been, tested in the name of the Chancellor. This might have been done, and, indeed, in this case was done, in ignorance

that the Chancellor was interested as a party defen-
dant. And farther, the bill might have been filed,
and, so far as it appears from this case, was filed,
before the Chancellor became a stockholder in the
Albany City Bank. The proof of the Chancellor's
interest as a stockholder, only exhibits his interest
during and since the month of August last; whereas
it was admitted that this bill was filed long before
August last.

As the case presents itself from the papers, we
must therefore assume that the Chancellor was not
a stockholder when the bill was filed—that the bill
was addressed to the Chancellor in the usual mode—
and that, after it was filed, the Chancellor became
interested by becoming a stockholder, in which case
the proceedings would really be before the Chan-
cellor as the principal officer of the court, though filed
before a Vice Chancellor. The next question which
is presented will then be, can there be an appeal in
such case, from the Vice Chancellor directly to the
court for the correction of errors, without passing
before the Chancellor first for review? This ques-
tion is important, because if no appeal in such case
can be taken directly from the order of the Vice
Chancellor to the court for the correction of errors,
it may be a matter of necessity to have it pass, *pro
forma*, in review before the Chancellor, as a conduit
to the ultimate tribunal for final decision. If the law
should, in such cases, cut off all appeal from the
Vice Chancellor to the court for the correction of
errors, it may be a lesser evil to have the cause pass
before the Chancellor, though interested, for decision,
than to foreclose the other party entirely from any
opportunity of having the errors of the Vice Chan-

cellor corrected.　In the one case, the party must of necessity submit to the error of the Vice Chancellor, without any chance of appeal : in the other case, there would be an appeal from the interested Chancellor to the higher court, which would most clearly be the lesser evil, tenacious as our citizens very properly are of the right of appeal.　If, then, I could see in the case put, that there is no appeal from the Vice Chancellor directly to the higher court, it would fully reconcile me to this appeal to the Chancellor, interested though he may be, as a lesser evil, and as being a case of necessity, to conduct the cause in its accustomed channel to the court of the last resort.

But I apprehend our laws neither compel a party to resort to an interested judge for decision, nor deprive him of his legitimate right of appeal.

Another section of the chapter in relation to the Court of Chancery, is as follows. (2 Rev. Stat. 107, Sec. 70.)　" An appeal shall not be made from any order or decree made by a Vice Chancellor, to the court for the correction of errors, until such order or decree shall have been brought before the Chancellor for review, and shall have been by him revised, modified, or affirmed, *except in cases where the Chancellor is a party, or interested.*"

This section, in words, covers the case when a bill is addressed to the Chancellor and filed before a Vice Chancellor, and the Chancellor becomes interested in the suit, after the filing of the bill.　It may be urged that the last clause of this section contemplates only the case provided for in the 10th section above cited, where the bill is directly addressed to the Vice Chancellor.　But there is nothing in the language of the 70th section, which gives counte-

Feb. 1840.

Jewett and another
v.
The Albany City Bank and another.

nance to any such construction. The language is broad and comprehensive, and forbids appeals from a Vice Chancellor to the court for the correction of errors, *except in cases where the Chancellor is a party or interested*—leaving it as a clear and decisive inference, that in such cases an appeal from a Vice Chancellor to the court for the correction of errors, is permitted. The 10th Section does not provide for a case when the Chancellor becomes interested after the commencement of the suit; the statute no where provides for such a case; but the *words* of this 70th Section meets it exactly, when the bill is filed before a Vice Chancellor. We must therefore assume that the legislature, by this section, contemplated just such a case as this, as the language of this section provides for it, and avoids the indelicacy of a preliminary appeal to a Chancellor who has become interested. It is so far adding another feature to the symmetry and perfection of the system, and providing for many (though not for all) possible cases. It does not provide for all, because it does not provide for the case of a bill filed before the Chancellor himself, when he shall become interested after the commencement of the suit; but *it* provides in words and, I think, in spirit, for this case. If I am right in this conclusion, there was an appeal in this case from the decision of the Vice Chancellor, directly to the court for the correction of errors; and that is the tribunal to which the defendants should have resorted, and not to the Chancellor.

The defendants insist, however, that this bill should have been addressed to the Vice Chancellor, under the 10th Section; but having been addressed to the Chancellor, it is in his court and before him; and

24

Feb. 1840.

Jewett and
another
v.
The Albany
City Bank
and another.

though the complainants were ignorant of the Chancellor's interest at the time of filing it, or though the Chancellor should become interested subsequently to filing it, yet an appeal only lay from the Vice Chancellor to the Chancellor. If this position is correct, the doctrine, if carried out, will put an end to this suit. The Chancellor being interested, the complainants cannot go on with their suit. They must discontinue, and file a new bill addressed in the manner required by the 10th Section. My construction of the whole statute, and particularly of the 70th Section, avoids this consequence.

The cases in 1 Hopkins, 1, and 19 Johns. 501, have been cited and commented upon by both sides. In both these cases the Chancellors were stockholders in incorporated companies. Chancellor Kent retained and Chancellor Sanford declined jurisdiction. The statute which existed at the time of both those decisions, was, however, different from the one now in force. The statute then provided " that when the Chancellor shall be a *party* to a suit in Chancery, the bill shall be filed," &c. Chancellor Kent deemed that being simply a stockholder in a corporation plaintiff, did not constitute him a *party* within the meaning of the statute; and Chief Justice Spencer, upon consultation, was of the same opinion. Chancellor Sanford deemed that being a stockholder did constitute him a *party* within the meaning of that statute.

It is not necessary to comment upon these conflicting views. The statute is now broader and more sweeping, and was evidently framed in accordance with the reasoning of Chancellor Sanford. The statute now provides " that when the Chancellor shall be a *party* to a suit in Chancery, or *interested in the*

*event of such suit,* the bill shall be addressed," &c.

Feb. 1840.

Jewett and
another
v.
The Albany
City Bank
and another.

Certainly, being a stockholder in a corporation party, is being *interested;* and the statute now as much deprives a Chancellor, having such an *interest,* of his jurisdiction, as the former statute did when the Chancellor was a *party* by name in the suit.

Again : though the complainants may very well be presumed not to know who are the stockholders of the Albany City Bank, yet the bank themselves who took this appeal, cannot set up any such ignorance. They must be assumed to know who were their own corporators ; and they cannot plead ignorance of the fact as an excuse for appealing to a wrong tribunal. If I am correct in my course of reasoning, the appeal should have been directly from the Vice Chancellor to the court for the correction of errors ; and the appeal to the Chancellor was irregular, null, and of no operation ; and the order of the Chancellor thereon, was also null and of no effect. This is a delicate and not a little difficult question to decide upon—delicate, because it carries upon its face the appearance of a subordinate officer attempting to overrule the decree of his official superior—difficult, because counsel of acute minds, who have given their attention to it, have differed in their conclusions. I have not the benefit of the views of the Chancellor—he evidently decided it at once as a matter of mere form, in the supposition that it was his duty to decide. The questions here argued, were not raised before him, and he gave them no examination ; and I have no aid from his research or reasonings. I could have wished that the decision here might have been avoided. I could have wished that the complainants had taken the case directly to

the court of errors from the decision of the Chancel-or. But they have chosen to present it here in this shape, and it is my duty to meet it and decide upon it.

I cannot look upon the decision I am about to make, as "*discharging, reversing, or altering*" any order or decree of the Chancellor, within the meaning of the statute. If the Chancellor was not authorised to make the order, the order itself was null, void, and of no effect, and an order which cannot be discharged, reversed, or altered, for it is a null thing from the beginning, and requires no order to discharge it. The motion of the complainants to suppress the depositions indicated in their notice, must be granted; but as the question is new, and admits of no little doubt, it must be without costs to either party.